UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                         CRIMINAL ACTION

V.                                               13-267

TERRANCE CONERLY                                 SECTION "F"

                           ORDER AND REASONS

    Before the Court is Terrance Conerly's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. For the following reasons, the motion is DENIED.

                              **Background**

    Terrance Conerly is a federal prisoner currently serving a 140-month sentence in a federal penitentiary. Conerly pled guilty before this Court to conspiracy to distribute and possess with intent to distribute 28 grams or more of crack cocaine and 500 grams or more of cocaine powder. On May 13, 2015, the Court sentenced Conerly to 140 months imprisonment. Conerly now submits this habeas corpus motion under 28 U.S.C. § 2255 seeking post-conviction relief from his sentence.

    In the factual basis underlying Conerly's guilty plea, he admits that he participated in a conspiracy to distribute crack and cocaine on a regular basis since before 2011. On September 6, 2011, DEA agents conducted a controlled crack purchase using a confidential informant. The confidential informant purchased 124

                                    1

grams of crack from Conerly for $2,850. The transaction was recorded with a video and audio device.

Special Agent Chad Scott, along with Task Force Officers Rodney Gemar and Justin Moran, interviewed Conerly on October 27, 2011. Agent Scott informed Conerly of the controlled purchase. Conerly admitted to distributing crack in Tangipahoa Parish, and confessed to having sources of supply in Baton Rouge, Tangipahoa Parish, and Houston.

Roughly two years later, in September of 2013, Agent Scott received information that Conerly was supplying cocaine and marijuana to another DEA confidential informant. Scott had the informant make two recorded phone calls to Conerly to discuss recent drug transactions. Scott allegedly obtained consent to search Conerly's residence and vehicle. Scott found over $10,000 in the vehicle and a semi-automatic handgun in the residence.

The next month, on October 9, 2013, Conerly's vehicle was pulled over in Beaumont, Texas for traffic violations. Conerly appeared "quite nervous" and told officers that he was returning from a funeral in Houston. The officers deployed a K-9 unit, and the dog gave a positive response for drugs. Apparently, Conerly then gave consent to search the vehicle. The officers found two gallon-sized Ziploc bags of cocaine in the car. Conerly admitted that he purchased the drugs in Houston with intent to distribute them in Louisiana.

Conerly was indicted on a single count of crack distribution. Later, the government filed a superseding bill of information charging Conerly with one count of conspiracy to distribute crack and cocaine. Conerly pled guilty to the one-count superseding bill of information pursuant to a plea agreement with the government. In exchange for Conerly's plea, the government agreed not to file a Bill of Information establishing his prior felony drug conviction. Had the government filed such a bill, Conerly would have faced a mandatory minimum of 10 years imprisonment.

Two other provisions of the plea agreement are relevant to this proceeding. The first provides:

> The defendant understands that any discussions with defendant's attorney or anyone else regarding sentencing guidelines are merely rough estimates and the Court is not bound by those discussions. The defendant understands that the sentencing guidelines are advisory and are not mandatory for sentencing purposes. The defendant understands the Court could impose the maximum term of imprisonment and fine allowed by law, including the imposition of supervised release.

Additionally, Conerly agreed to waive his rights under Rule 410 of the Federal Rules of Evidence. The relevant provision states:

> [I]f the defendant decides to rescind the plea agreement and refuses to plead guilty after he has signed this document and the accompanying factual basis, the Government has the right to use this document and the accompanying factual basis as an admission of his guilt to the charged offenses in the Government's case-in-chief during the trial in the above referenced matter. Defendant understands that Federal Rule of Evidence 410 provides him protection from the use of such admissions

3

made during plea negotiations or as a result of plea agreements, but knowingly and voluntarily waives that protection and those rights afforded by Rule 410 of the Federal Rules of Evidence.

Conerly also waived his right to appeal or contest his conviction and sentence, except he explicitly retained his right to appeal a sentence imposed in excess of the statutory maximum and to bring a post-conviction claim for ineffective assistance of counsel.

Conerly asserts four grounds for his post-conviction motion: 1) his counsel was ineffective for failing to advise Conerly that he could withdraw his plea once this Court rejected his plea; 2) this Court erred in failing to advise Conerly that it was rejecting his plea agreement, as required by Rule 11(c)(5) of the Federal Rules of Criminal Procedure; 3) his counsel was ineffective for not investigating the lead DEA agent on the case, Chad Scott, who is now under investigation for misconduct; and 4) the Court should review the newly discovered evidence against Chad Scott in a light most favorable to Conerly. The Court addresses each contention.

I.

To prevail in an ineffective assistance of counsel claim, the petitioner carries the burden of proof to satisfy both prongs of Strickland test: 1) that his counsel's performance was deficient; and 2) that his counsel's deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

4

If the Court finds that the petitioner has made an insufficient showing at either stage of inquiry, the Court may dispose of the claim. The Supreme Court also instructs, "If it is easier to dispose of an ineffectiveness claim on the ground of insufficient prejudice . . . that course should be followed." Id. at 697.

Under the first prong, "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Courts "will not find inadequate representation merely because, with the benefit of hindsight, [they] disagree with counsel's strategic choices. Green v. Johnson, 116 F.3d 1115, 1112 (5th Cir. 1997).

To establish prejudice under the second Strickland prong, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. When a petitioner has pled guilty, his burden is to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

5

II.

The Court now turns to each of Conerly's grounds for relief.

A.

Because Conerly's first two contentions are related, the Court addresses them together. Conerly claims that: 1) his counsel was ineffective for failing to advise him that he could withdraw his plea after this Court rejected the plea agreement; and 2) the Court violated Federal Rule of Criminal Procedure 11(c)(5) by failing to advise him that it was rejecting his plea agreement. Both claims are premised on inaccurate facts.

Conerly urges that he signed a binding plea agreement limiting his sentence to 89 months imprisonment, and that the Court rejected the agreement. Neither are true.[1] Nowhere in the plea agreement did the parties agree to a specific sentence. Rather, the plea agreement plainly states that the defendant understands "he faces a mandatory minimum of 5 years [and] a maximum term of imprisonment of 40 years." Later, the agreement adds, "The defendant understands the Court could impose the maximum term of imprisonment and fine allowed by law." Moreover, the Court did not reject Conerly's plea

---

[1] Conerly mistakenly asserts that his plea agreement is governed by Rule 11(c)(1)(C), in which the government agrees that a specific sentence or sentencing range is the appropriate disposition of the case. No such agreement was reached. Instead, Conerly's plea agreement is governed by Rule 11(c)(1)(A), which applies when the government agrees not to bring other charges. Here, the government agreed not to file a Bill of Information establishing that Conerly had a prior felony conviction.

6

deal. To the contrary, the Court explicitly accepted the agreement and found Conerly guilty.

Thus, Conerly's first two contentions afford him no relief. Neither defense counsel nor the Court erred by failing to advise Conerly that he could withdraw his plea once it was rejected because the plea deal was never rejected.

B.

Conerly's final two grounds for relief are also related. The Court considers them together. Conerly claims: 1) that his counsel was ineffective for failing to investigate potential misconduct of DEA Agent Chad Scott; and 2) that any new evidence of Scott's misdeeds should be construed in a light favorable to Conerly.

Revelations of misconduct by members of a DEA task force were uncovered at the beginning of this year, eventually leading to a criminal investigation into DEA Agent Chad Scott. The investigation is ongoing. Scott was involved in the case against Conerly.

The Court first notes that, in his plea agreement, Conerly waived nearly every right to challenge his conviction. The only right he retained is to assert a claim for ineffective assistance of counsel. Accordingly, any speculation of misconduct by Chad Scott is only relevant to Conerly's petition insofar as it relates to the (in)effectiveness of Conerly's counsel. The only two questions, thus, are whether his counsel's performance was

7

deficient regarding Scott's alleged misconduct, and, if so, whether there is a reasonable probability that, but for counsel's errors, Conerly would have not pled guilty and insisted on going to trial. See Strickland, 466 U.S. at 487; Hill, 474 U.S. at 59.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989). Conerly asserts that his counsel was ineffective for failing to investigate Chad Scott, the lead DEA agent in his case, "because during the course of the prosecution of the case, the agent was being investigated for criminal conduct, drug dealing and fabricating cases." According to Conerly, "Chad Scott had been accused of drug dealing, allowing informants to continue drug dealing while on his payroll, fabricating cases, and other criminal conduct." He urges that, had his counsel investigated these facts, he could have challenged the credibility and reliability of Scott's informants. In spite of his guilty plea and this Court's detailed examination of the defendant, he submits that there is "a strong chance this whole case was fabricated."

Again, Conerly's assertions are largely premised on incorrect facts. Conerly pled guilty on July 30, 2014. He was sentenced on May 13, 2015. Allegations of Chad Scott's misconduct did not surface until a year and a half after Conerly pled guilty and over

8

six months after he was sentenced. Accordingly, there is no evidence of any criminal investigation into Chad Scott or even allegations of misconduct at any time during the pendency of Conerly's case.

Conerly admitted in the factual basis coincident to his plea agreement that he was caught in Beaumont, Texas on October 9, 2013 with two gallon-sized Ziploc bags of cocaine. He admitted to Beaumont police officers that he purchased the cocaine in Houston and was transporting it to the Eastern District of Louisiana. It appears from the record that Chad Scott was not involved in this traffic-stop-turned-drug-bust.

Under the deferential Strickland standard, this Court cannot find that Conerly's counsel erred by failing to investigate unknown and perhaps, unknowable, misconduct by Chad Scott. Nor does the Court find it reasonably probable that, in light of the overwhelming evidence obtained by other law enforcement officers, Conerly would have insisted on going to trial if Scott's misconduct was somehow discoverable.

Accordingly, IT IS ORDERED that Terrance Conerly's motion to vacate under 28 U.S.C. § 2255 is DENIED.

New Orleans, Louisiana, August 10, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

9